CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 27 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| THOMAS L. HICKS, | CASE NO. 7:16CV00384 |
| Petitioner, | |
| v. | MEMORANDUM OPINION |
| DIRECTOR, VIRGINIA DEPARTMENT OF CORRECTIONS, | By: Hon. Glen E. Conrad<br>Chief United States District Judge |
| Respondent. | |

Thomas L. Hicks, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on a final order by the Rappahannock County Circuit Court convicting him of attempted murder, malicious wounding, use of a firearm in the commission of a felony, and robbery. Respondent filed a motion to dismiss, and Hicks responded, making the matter ripe for disposition. After review of the record, the court concludes that the petition must be dismissed.

I.

*A. Factual Background*

Around 8 P.M. on June 10, 2010, Clyde "Jack" Dellinger was in his front yard when he was shot in the face and robbed of the cash in his pocket. Daniel and Paula Dellinger, Clyde's son and daughter-in-law, were driving home around the same time as the shooting.[1] They noticed Clyde lying on his back in the yard and rushed to check on him. Daniel ran up and asked Clyde what had happened and if he needed help. As Clyde lay there bleeding, he excitedly stated: "He shot me, Daniel, and he robbed me." Hicks v. Commonwealth, 725 S.E.2d 748, 751 (Va. Ct. App. 2012). Daniel testified, "I guess [Clyde] thought he was gonna not make it, so he just gave information and all he could." Id. Still on the ground in a pool of blood, Clyde told

---

[1] Daniel and Paula lived behind Clyde.

Daniel that Tom Thompson, or Thomason,[2] shot and robbed him. "Daniel testified that Clyde made these statements 'spontaneously' rather than in response to sustained questioning. Clyde also inquired of his son whether he would get some help and whether he could take him to the hospital." Id.

Paula had called 911, and Clyde remained conscious during the short wait for help to arrive. "Paula testified that there 'was an urgency in his voice, that he had to tell us as much as he could, I believe, because he wasn't sure if he was going to make it.'" Id. While on the ground, Clyde had an automotive belt in his hand, which he told Daniel and Paula that he had sent "Tom" to Culpeper to retrieve. Clyde also "indicated that the belt was very important to finding 'Tom.'" Id.

Clyde later testified at Hicks' preliminary hearing and identified him as the man who shot and robbed him. Before trial, Clyde died of causes unrelated to the shooting. After Clyde's death, the Commonwealth filed a pretrial motion to allow Clyde's statements to Daniel and his statements at the preliminary hearing to be allowed into evidence under hearsay exceptions: excited utterance of a victim now deceased, and the preliminary hearing testimony of one who is now deceased. The trial court granted the motion and allowed the testimony and statements into evidence.

B. *Procedural History*

The jury convicted Hicks of attempted murder, malicious wounding, use of a firearm in the commission of a felony, and robbery, and the trial court imposed the jury's aggregate sentence of forty-eight-years' imprisonment. Hicks appealed, arguing that the circuit court erred by (1) ruling that statements of Clyde Dellinger, the alleged victim, could come into evidence as an excited utterance exception to the hearsay rule, and (2) by allowing at trial the testimony of

---

[2] Investigators later determined that Hicks used the alias "Tom Thompson."

2

witnesses who were present at the preliminary hearing and who heard the testimony of Clyde Dellinger. The Virginia Court of Appeals affirmed the convictions. The Supreme Court of Virginia then refused Hicks' petition for appeal, and further denied his petition for rehearing.

Hicks then timely filed a petition for a writ of habeas corpus in the Rappahannock County Circuit Court, alleging six claims of ineffective assistance of counsel and four substantive claims. First, Hicks claimed that counsel was ineffective for:

1. failing to move to continue the preliminary hearing because a court reporter was not present;

2. failing to object when the jury sent two notes to the judge during deliberation;

3. failing to call Officer Fincham as a defense witness to testify about what he had told James Hackley to say about his identification of Hicks;

4. failing to file a motion to have James Hackley's statement disqualified under the hearsay rule;

5. failing to call Officer Fincham as a defense witness to testify about his identification or what the officer told his mother, brother, and sister-in-law to say about Hicks' case; and

6. failing to object to the testimony of Paula Dellinger, knowing that Paula used OxyContin.

Hicks also alleged that:

7. Ms. Fincham made a false statement at trial when she said she saw Hicks facing the victim;

8. The Virginia Supreme Court ruled that the testimony of Paula Dellinger and Sheriff Connie Smith should not have been admitted at trial;

9. The trial court erred in allowing the Commonwealth to show the jury the gun that injured the victim; and

10. The victim was not shot from the blue car because he did not have gun powder residue on him.

The Rappahannock County Circuit Court granted the respondent's motion to dismiss: the court found Claims 7, 9, and 10 barred under Slayton v. Parrigan, 205 S.E.2d 680 (1974), Claim 8 barred by Henry v. Warden, 576 S.E.2d 495 (2003), and that the remainder of the claims did not satisfy Strickland v. Washington, 466 U.S. 668 (1984).

Hicks appealed, reiterating the same claims as in the circuit court but adding an allegation that the circuit court "failed to identify the substance of the claims asserted in the [state habeas] petition and state the reasons for the denial of each claim." The Virginia Supreme Court refused to review Hicks' new claim and dismissed the rest of the petition because the claims were procedurally defaulted under Virginia Supreme Court Rule 5:17(c)(iii). The court later denied Hicks' motion to amend.

On July 7, 2016, Hicks timely filed a petition for a writ of habeas corpus in the federal district court, alleging nine ineffective assistance of counsel claims and two substantive claims.[3] First, counsel was ineffective for:

1. Failing to (1) continue the preliminary hearing, and (2) follow Hicks' instruction to have the preliminary proceedings continued because no court reporter was present (Claim 1 and A);

2. Failing to object when the jury sent two notes to the judge during deliberation (Claim 2 and B);

---

[3] Hicks raises four claims in his amended petition, and eleven additional claims in a handwritten supplement to his petition. However, Claims B, D, and E in Hicks' supplement are identical to Claims 2, 4, and 3, respectively, in Hicks' amended petition. In order to minimize confusion, the court consolidated and reordered his claims. Hicks' original numberings are in parentheses. Hicks' petition does not have a Claim C.

4

3. Failing to call Officer Fincham as a defense witness to testify about what he had told James Hackley to say about his identification of Hicks and what the officer told his mother, brothers, and sister-in-law to say about Hicks' case (Claim 3 and E);

4. Failing to investigate James Hackley in order to challenge his testimony at trial or file a motion to have Hackley's statement disqualified under the hearsay rule (Claim 4 and D);

5. Failing to object to Ms. Fincham's false testimony that she saw Hicks at Clyde's home at 7:30 P.M. on June 20, 2010, and that Hicks was facing Clyde at that time (Claim F);

6. Failing to object to the Commonwealth's displaying of a .40 caliber firearm during Hicks' trial when the trial court had already severed the additional firearm charges (Claim H);

7. Failing to object to the testimony of Clyde Dellinger, knowing that Clyde was on OxyContin (Claim I);

8. Failing to subpoena the victim's clothes and failing to ask the state forensic scientist certain questions regarding gun powder residue that would have proved the victim was not shot from the blue car because he did not have gun powder residue on him (Claim J); and

9. Failing to bring witness John McCoy's inability to identify Hicks in court to the jury's attention (Claim L).

Hicks' also alleged the following substantive claims:

10. Defense counsel's affidavit prepared for use in the state habeas proceeding contradicts a letter sent to the prosecutor on February 4, 2013 (Claim G); and

11. The jury relied on false testimony when it convicted Hicks (Claim K).

5

Respondent moves to dismiss Hicks' claims as procedurally barred and/or without merit, and Hicks has responded to the motion.

## II. Standard of Review

To obtain federal habeas relief, Hicks must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, a federal court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could agree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 66, 101 (2011) (omitting internal quotations).

## III. Exhaustion and Procedural Default

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citations omitted). To meet the exhaustion requirement, a petitioner "must have presented to the state court both the operative facts and the controlling legal principles." Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (internal quotation marks and citation omitted).

Also, "[a] habeas petitioner is barred from seeking federal review of a claim that was presented to a state court and 'clearly and expressly' denied on the independent, adequate state ground of procedural default." Bennett v. Angelone, 92 F.3d 1336, 1343 (4th Cir. 1996) (citing Harris v. Reed, 489 U.S. 255, 263 (1989)). A procedural rule is adequate "if it is regularly or consistently applied by the state court," and independent "if it does not 'depend[] on a federal constitutional ruling.'" Yeatts v. Angelone, 166 F.3d 255, 260 (4th Cir. 1999) (quoting Ake v. Oklahoma, 470 U.S. 68, 75 (1985)). Further, "[a] claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker, 220 F.3d at 288 (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). Such claims are simultaneously exhausted and defaulted. See Burket v. Angelone, 208 F.3d 172, 183 n.11 (4th Cir. 1999).

Hicks' current claims are exhausted but defaulted because they were not properly presented to the Supreme Court of Virginia. Hicks did not bring any of these claims on direct appeal, and in his state habeas appeal, the Supreme Court of Virginia found his claims procedurally defaulted under Va. Sup. Ct. R. 5:17(c)(iii). Rule 5:17 is an independent and adequate state ground of procedural default. See Mueller v. Angelone, 181 F.3d 557, 584 (holding "procedural default under Rule 5:17(c) is an independent and adequate state bar").

Hicks cannot now present these claims to the Virginia Supreme Court because he is barred by both the Virginia habeas statute of limitations, Va. Code § 8.01-654(A)(2), and the successive petition bar, Va. Code § 8.01-654(B)(2). See Sparrow v. Dir., Dep't of Corr., 439 F. Supp. 584, 587-88 (E.D. Va. 2006) (holding that claims barred by Va. Code § 8.01-654(A)(2) are

not reviewable in federal habeas proceedings); Gray, 518 U.S. at 162 (holding that claims barred by Va. Code § 8.01-654(B)(2) are not reviewable in federal habeas proceedings).

## IV. Excuse for Default

A state prisoner can obtain federal habeas review of a procedurally defaulted claim if he shows either (1) cause and prejudice or (2) a miscarriage of justice.[4] Coleman v. Thompson, 501 U.S. 722, 750 (1991). To show cause, a petitioner must demonstrate that there were "objective factors," external to his defense, which impeded him from raising his claim at an earlier stage. Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must show that the alleged constitutional violation worked to his actual and substantial disadvantage, infecting his entire trial with error of a constitutional magnitude. Id.

Under Martinez v. Ryan, 566 U.S. 1 (2012), a federal habeas petitioner may satisfy the "cause" requirement of an otherwise procedurally defaulted claim of ineffective assistance if: (1) the ineffective assistance claim is a "substantial" one; (2) the "cause" for default "consist[s] of there being no counsel or only ineffective counsel during the state collateral review proceeding"; (3) "the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim"; and (4) state law "requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding." Fowler v. Joyner, 753 F.3d 446, 461 (4th Cir. 2014) (quoting Trevino v. Thaler, 133 S. Ct. 1911, 1918 (2013)).

A "substantial" claim is one that has merit. Martinez, 566 U.S. at 14. To establish ineffective assistance, a petitioner must show that counsel's performance fell below an objective

---

[4] Hicks does not argue a colorable claim of actual innocence under Schlup v. Delo, 513 U.S. 298 (1995) and McQuiggin v. Perkins, 133 S. Ct. 1924 (2013) that would allow for review of his claims regardless of his default. He has not asserted an actual innocence argument or proffered any "new reliable" evidence in support of his allegations. Therefore, the court need not address the miscarriage of justice exception.

8

standard of reasonableness and that he was prejudiced by the alleged deficient performance. Strickland v. Washington, 466 U.S. 668, 669 (1984). Courts apply a strong presumption that counsel's performance, especially regarding trial management and strategy, was within the range of reasonable professional assistance. Id. at 689. To demonstrate prejudice, petitioner must show there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "Bare allegations" of constitutional error are not sufficient grounds for habeas relief; the petitioner must proffer evidence to support his claims. Nickerson v. Lee, 971 F.2d 1125, 1135 (4th Cir. 1992).

V. Analysis

A. Unreviewable Claims

In Claim 10, Hicks argues that trial counsel contradicted herself in an affidavit prepared for the circuit court habeas proceeding.[5] However,

> a challenge to Virginia's state habeas corpus proceedings [] cannot provide a basis for federal habeas relief. See Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors and irregularities in connection with state post-conviction proceedings are not cognizable on federal habeas review).

Wright v. Angelone, 151 F.3d 151, 159 (4th Cir. 1998). Federal habeas petitioners may not challenge a state post-conviction ruling because "the petitioner is not 'detained as a result of a decision of the [state court] in the state habeas action,' but rather is in custody pursuant to the ruling of the original trial court." Orbe v. True, 233 F. Supp. 2d 749, 787 (E.D. Va. 2002)

---

[5] Hicks' allegation is also without merit. Hicks asserts that counsel contradicted herself by stating on one occasion that the Virginia Supreme Court affirmed the trial court's ruling that the hearsay evidence was admissible, and telling Hicks on another occasion that the court held the evidence to be inadmissible. Hicks appears to confuse counsel's summary of the Virginia Supreme Court's argument that the inclusion or exclusion of the hearsay evidence was *irrelevant*: "even if . . . the hearsay testimony should not have been admitted and that the daughter-in-law and Sheriff should not have been permitted to testify about the preliminary hearing, [the Virginia Supreme Court found that] there was still sufficient evidence to base a conviction on." Pet'r's Suppl. to the Am. Pet. 18, ECF No. 7, Attach. 1.

(quoting Wright, 151 F.3d at 159.). Therefore, Claim 10 is not cognizable on federal habeas review.

Also, Claim 11 is defaulted under Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974), because Hicks could have raised the issue on direct appeal, but failed to do so. See Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2006) (Parrigan is an adequate and independent bar.). Martinez does not apply, and Hicks has not shown cause and prejudice or a miscarriage of justice excuses his default.[6]

### B. *Martinez* Claims

#### i. Claim 1

Hicks' claims of ineffective assistance of counsel lack merit and, thus, are not "substantial." Accordingly, the court finds that these claims are barred from federal habeas review.

In Claim 1, Hicks asserts that trial counsel was ineffective for (1) failing to follow his instruction to have the preliminary proceedings "not to be continued,"[7] and (2) for failing to move to continue the preliminary hearing because a court reporter was not present.

First, Hicks' allegations are conclusory. He has not provided any support for his claim that continuing, or having a court reporter present, would have resulted in favorable evidence. His assertion that Clyde "was in pain, had been shot in his head, was slurred in his spe[e]ch and

---

[6] Martinez can only be used to show cause for ineffective assistance of counsel at the initial habeas proceeding.

[7] The court interprets Claim 1 to be that counsel was ineffective for failing to continue the hearing, not failing to have the hearing "not to be continued." The latter is meritless because the hearing was not continued. The court's interpretation is bolstered by Hicks' statement that "[t]he defen[s]e was at a minimum entitled to a continu[a]nce." Pet'r's Am. Pet. 5, ECF No. 7.

10

on . . .Oxytocin,"[8] is not proof that his constitutional rights were violated or that the violation fundamentally affected his trial. Under Nickerson, bare allegations are not sufficient grounds for habeas relief. Second, counsel's decision to not continue the hearing is part of the trial strategy that is left to counsel's professional judgment. New York v. Hill, 528 U.S. 110, 115-16 (2000) ("Scheduling matters are plainly among those for which agreement by counsel generally controls . . . [O]nly counsel is in a position to assess the benefit or detriment of the delay to the defendant's case."). Therefore, Claim 1 fails under both prongs in Strickland and is not "substantial" under Martinez.

ii. Claims 2, 5, 6, and 7

In Claim 2, Hicks alleges that counsel was ineffective for failing to object to the trial court's answer to "two notes" from the jury asking whether the sentences would run consecutively or concurrently. First, the record shows that the jury only sent one note to the judge during the punishment phase. The jury "wished to know if the sentences imposed would run consecutively or concurrently," and the court "correctly answered that 'they were not to concern themselves with what happened afterwards.'" Hicks v. Dir., Dep't of Corr., No. CL13-203, at 7 (Va. Cir. Ct. Jun 9, 2015), ECF No. 18, Attach. 6. As the state habeas court noted, the trial judge's answer was a correct statement of law. Vines v. Muncy, 553 F.2d 342, 349 (4th Cir. 1977) ("[T]he punishment fixed by the jury is not final or absolute, since its finding on the proper punishment is subject to suspension by the trial judge . . . The verdict of the jury is the fixing of maximum punishment which may be served."). Counsel is not ineffective for failing to make a futile objection. See Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (holding that counsel is not required to file frivolous motions).

---

[8] Oxytocin is a hormone used as a medication to facilitate childbirth; presumably Hicks meant the prescription painkiller, OxyContin.

11

In Claim 5, Hicks argues that counsel was ineffective for failing to object to Ms. Fincham's testimony because it was false. However, counsel challenged Ms. Fincham's identification testimony by casting doubt on her ability to see, through foliage and while driving, what was going on in front Clyde Dellinger's home. Tr. 271-74 ("So once you pass the driveway, if you will, any view of this area would be blocked by trees, correct?"). Hicks fails to show that counsel's decision not to object was ineffective assistance of counsel because putting the credibility of Ms. Fincham's testimony to the jury by casting doubt on her eyewitness claims could have been a reasonable trial tactic. See Arnold v. Evatt, 113 F.3d 1352, 1362-63 (4th Cir. 1997) (Counsel's decision to put a witness' credibility to the jury instead of objecting could have been part of a reasonable trial strategy).

In Claim 6, Hicks contends that counsel was ineffective for failing to object or move for a mistrial when the Commonwealth introduced a .40 caliber firearm into evidence, as the weapon "inflamed and prejudiced the jury to conviction." Hicks protests that the .40 caliber pistol was irrelevant and unnecessarily inflammatory in the Clyde Dellinger trial because counsel had successfully severed charges regarding other firearms, including the .40 caliber weapon. Nevertheless, the .40 caliber firearm was relevant because Hicks had traded the .40 caliber pistol for the .38 caliber firearm used to shoot Clyde Dellinger. Tr. 169-92, 208-211.

Further, he claims that counsel was ineffective for not objecting to the inflammatory nature of the evidence. However, the decision not to object[9] was a valid trial strategy, because an objection could have drawn the jury's attention even further to the evidence. See Evans v. Thompson, 881 F.2d 117, 125 (4th Cir. 1989) (holding that deciding whether to object or not is a

---

[9] If counsel had objected to the inflammatory nature of the evidence, it would have been the second objection regarding the same evidence. Counsel had already objected on relevance grounds: "[Counsel]: Your Honor, I'm going to object to the relevance of something that took place in January of 2010." Tr. 171. The Commonwealth countered: "[T]his [.40 caliber] firearm . . . is going to be connected with the second gun that we believe was the shooting weapon. And so it's necessary to place [the .40 caliber] gun in [Hicks'] possession." Id.

tactical decision that "attorneys make routinely"); Moore v. United States, 934 F. Supp. 724, 727 (E.D. Va. 1996) ("Indeed, all practitioners recognize that not infrequently, it is better to remain silent than to draw attention to a matter by offering an objection. Courts, too, recognize counsel's autonomy in strategic trial behavior.").

In Claim 7, Hicks states that counsel was ineffective for failing to object to Clyde Dellinger's testimony because Clyde was on OxyContin and had just been shot; specifically, counsel failed to file a motion to obtain Clyde's toxicology report, have a competency hearing, or outright exclude Clyde's testimony as an incompetent witness.[10] Under Virginia law, "[a] witness is competent to testify . . . if he 'possesse[s] the capacity to observe, recollect, communicate events, and intelligently frame answers to the questions asked of him or her with a consciousness of a duty to speak the truth.'" Jones v. Commonwealth, 526 S.E.2d 281, 287-88 (Va. Ct. App. 2000) (quoting Greenway v. Commonwealth, 487 S.E.2d 224, 227 (Va. 1997)). In his petition, Hicks alleges that because Clyde slurred his words, had recently undergone severe trauma, and was on painkillers, he was an incompetent witness. However, witness competency is an extremely low bar, and Hicks fails as a matter of law to allege sufficient facts to demonstrate that Clyde was incompetent.[11]

---

[10] The Assistant Attorney General in the present case interpreted Hicks' petition as ineffective assistance of counsel for "failing to object to Paula Dellinger's testimony on the ground that she used OxyContin." Resp't's Br. 15, ECF No. 18. However, Hicks' filings clearly refer to Clyde Dellinger being incompetent to testify, *not* Paula Dellinger: "Mr. Dellinger was on OxyCo[n]tin at the time of testimony and still under a doctor's care." Pet'r's Suppl. to Am. Pet. 23-24, ECF No. 7, Attach 1. Also, "Mr. Dellinger had 'bullet fragment[]s in his brain, was slurr[ing] words, not memory of events [sic], and was on (OxyCo[n]tin) a narcotic without a doctor[']s consent." Pet'r's Resp. to Mot. to Dismiss 6, ECF No. 27. The state habeas court also addressed the claim as Paula Dellinger using OxyContin. Regardless of Hicks' intent in Claim 7, he asserts no evidence that Paula Dellinger was on OxyContin at the time of her testimony; therefore, if the claim was meant to refer to Paula Dellinger, it is still without merit.

[11] At the threshold, "federal habeas corpus relief does not lie for errors of state law" because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (holding that federal habeas courts can only review state-court decisions on state law if the decision was so outrageous as to violate due process). In Virginia, "[t]he admissibility of evidence is within the discretion of the trial court," and although the Virginia Court of Appeals did not directly address a

To support his claim, Hicks merely outlays the potential side effects of OxyContin, a general caution regarding its use in elderly and debilitated patients, and an allegation that Clyde did not have a valid prescription. His statements are self-serving and conclusory and he offers no proof that Clyde was so debilitated by his injury and alleged painkiller use that introduction of the testimony into evidence violated Hicks' constitutional rights. Regardless, counsel's decision not to object to testimony and instead put the witnesses' credibility to the jury could have been part of a reasonable trial strategy; therefore, counsel's performance was not deficient as to Claim 7. See Arnold, 113 F.3d at 1362-63.

Further, Hicks fails to demonstrate prejudice from counsel's failure to object in Claims 2, 5, 6, and 7. See United States v. Wood, 879 F.2d 927, 933-34 (D.C. Cir. 1989) (citing Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)) ("[T]o prevail on a claim of ineffectiveness of counsel, a defendant must show that there is a 'reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different' . . . the defendant must show that the [] claim has merit and that there was a reasonable possibility that the verdict would have been different . . . ."). Hicks makes no such showing; thus, Claims 2, 5, 6, and 7 do not satisfy either prong under Strickland, and are not "substantial" under Martinez.

---

competency issue, the court did uphold the trial court's ruling that Clyde's testimony was admissible under hearsay exceptions. Hicks v. Commonwealth, 725 S.E.2d 748, 752-55 (Va. Ct. App. 2012). In his petition, Hicks cites United States v. Larson, 596 F.2d 759 (8th Cir. 1979) and Harris v. Cotton, 365 F.3d 552 (7th Cir. 2004), but both cases are unavailing. In Larsen, the defense rested because an exculpatory witness appeared to be unavailable, but the witness became available shortly after and reopening the case would not have prejudiced the government. In Harris, counsel was ineffective in a murder trial for failing to obtain a toxicology report which would have shown that the victim had been under the influence of alcohol and cocaine at the time the petitioner killed the victim. Because the petitioner asserted a self-defense argument and the toxicology report reflected upon the victim's behavior at the time of the victim's death, the report "was critical to [the petitioner's] defense." 365 F.3d at 556. Hicks did not have a witness become available after the defense rested but before closing arguments like in Larson; Clyde Dellinger was not an exculpatory witness, and he died before trial. Also, unlike the petitioner in Harris, Hicks does not argue that he shot Clyde in self-defense and that counsel was ineffective for not obtaining a toxicology report of Clyde at the time of the shooting; instead, he argues that counsel was ineffective for not obtaining a toxicology report at the time of Clyde's testimony.

### iii. Claim 3

In Claim 3, Hicks asserts that counsel was ineffective for failing to call Officer Fincham as a defense witness to testify about what he had told James Hackley to say about his identification of Hicks and what Officer Fincham told his mother, brother, and sister-in-law to say about Hicks' case. The Rappahannock County Circuit Court held that:

> [T]here was no evidence Officer Fincham 'arranged for his family to testify and identify Mr. Hicks.' Further, the 'fact that [Officer Fincham] was an officer on scene and his mother testified that she saw Mr. Hicks at [the victim's shop] on the day in question was brought out during cross-examination and argued at sentencing." And, defense counsel states that '[h]er identification of the defendant was subject to cross-examination and its credibility, or lack thereof, was argued during closing argument.'

Hicks v. Commonwealth, No. CL13-203, at 9-10 (Va. Cir. Ct. Jun. 9, 2015), ECF No. 18, Attach. 6. The court agrees with the state habeas court's analysis. Hicks does not offer any supporting facts for his conclusory allegation of a Fincham conspiracy to have Hackley and family members testify against Hicks. Regardless, Hicks has not proffered an affidavit of Officer Fincham's purported favorable testimony, which proves fatal to his claim. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996). Further, counsel has "full authority to manage the conduct of the trial . . . [and] the client must accept the consequences of the lawyer's decision to forgo cross-examination, [or] to decide not to put certain witnesses on the stand." Taylor v. Illinois, 484 U.S. 400, 418 (1988). Because Officer Fincham "would not cooperate with defense counsel and would not have had anything favorable to say for the defense," counsel made a reasonable tactical decision to not call Officer Fincham to testify. Hicks v. Commonwealth, No. CL13-203, at 8 (Va. Cir. Ct. Jun. 9, 2015), ECF No. 18, Attach. 6. Therefore, Claim 3 does not satisfy either prong of Strickland and is not "substantial" under Martinez.

### iv. Claim 4

In Claim 4, Hicks argues that counsel was ineffective when she failed to investigate James Hackley in order to challenge his testimony or file a motion to have Hackley's statement disqualified as hearsay. First, Hicks has not demonstrated what favorable evidence would have resulted from investigation. See Beaver, 93 F.3d at 1195 ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."). Second, Hicks has not demonstrated how additional investigation would have affected the outcome of the trial. See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."). "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been . . . 'it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in court performance.'"). Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994) (quoting United States ex rel. Partee v. Lane, 926 F.2d 694, 701 (7th Cir. 1991)). At trial, Hicks did contradict Hackley's testimony slightly by stating that he had never met Hackley. Nonetheless, Claim 4 is entirely unsupported by facts: he does not allege specific favorable evidence that investigation would have revealed, and he does not show how an investigation of Hackley would have affected the outcome of the trial.

Further, Hicks complains that Hackley's testimony should have been disqualified as hearsay. However, Hackley had personal knowledge of the facts underlying his testimony. First, Hackley testified that Clyde had introduced Hicks to Hackley as "Tommy Thompson." Tr. 238. Second, Hackley testified that he knew that Clyde generally carried a significant amount of

money on his person because Clyde ran a cash business and had made change for Hackley after purchases and repairs. Tr. 240-43. Counsel was not ineffective for failing to make a frivolous motion. See Moody, 408 F.3d at 151. Therefore, Claim 4 does not satisfy either prong of Strickland and is not "substantial" under Martinez.

v. Claim 8

In Claim 8, Hicks argues that counsel was ineffective for failing to ask the state forensic scientist why, if Clyde Dellinger had been shot from inside the blue car, primer residue had not been found in various places in the car, on Clyde Dellinger's clothes, and on Clyde Dellinger himself. In his petition, Hicks asks questions without attempting to answer them and makes conclusory statements about how, if counsel had questioned the scientist, the testimony would have been favorable. Unanswered questions and legal conclusions lacking factual support cannot satisfy the deferential standard under Strickland. Moreover, when counsel cross-examined the forensic officer, counsel questioned many aspects of the forensic process, including where the investigator gathered the primer, the possibility of transference of the primer, and the inability of the forensic scientist to determine how old the primer sample was. Tr. 444-45. In general, habeas courts "are reluctant to second guess the tactics of trial lawyers," and witness questioning is a matter of trial strategy. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977). Therefore, Claim 8 does not satisfy either prong under Strickland is not "substantial" under Martinez.

vi. Claim 9

In Claim 9, Hicks alleges that counsel was ineffective for not notifying the jury that John McCoy had failed to identify Hicks in court as the man that was with Clyde Dellinger around the time of the shooting. McCoy testified that he saw a man speaking to Dellinger on the night of

June 10, but McCoy did not recognize him.[12] McCoy stated in response to the Commonwealth's questioning that the man could have been Hicks, but counsel objected to the answer as speculative, which the trial court sustained. Tr. 287-88. After counsel's sustained objection, the jury was well aware that McCoy had failed to identify Hicks as the man with Dellinger on the night of the shooting. Hicks cannot show deficient performance or prejudice from counsel's failure to reiterate known facts to the jury. Therefore, Claim 9 does not satisfy either prong of Strickland and is not "substantial" under Martinez.

## VI.

For the reasons stated, the court will grant the motion to dismiss. All claims are procedurally barred without excuse and/or not cognizable on federal habeas review. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to Hicks and to counsel of record for Respondent.

ENTER: This 27th day of June, 2017.

*/s/ Conrad*
Chief United States District Judge

---

[12] "I saw [a man at Dellinger's], but I didn't recognize him, and I didn't get a really good look at him." Tr. 284.